## MYERS v. SHAIN LUMBER COMPANY.

Opinion delivered October 29, 1928.

*Woods & Greenhaw,* for appellant.

*Shouse & Rowland* and *Gaston & Hipps,* for appellee.

HUMPHREYS, J. The questions presented by this appeal are whether a chattel mortgage executed by appellee, Shain Lumber Company, to W. J. Myers, appellant, on the 23d day of February, 1925, secured an existing indebtedness of $5,382.56, by said appellee to said appellant, for money advanced by appellant to it to operate its lumber business in Harrison, Arkansas. Between the dates of October 24, 1924, and February 23, 1925, appellee borrowed on open account from appellant $8,310.56 to operate its business, and paid appellant on said indebtedness during said period $2,927.99, leaving a balance due appellee on book account of $5,382.56. Appellee was unable to pay the indebtedness, and needed additional money from time to time to operate its business. Appellant was willing, if secured, to make further advances to appellee for such purpose, pro-

vided appellant's son was employed to manage the business, except the actual operation of the mill, which W. F. Shain, sole owner of the Shain Lumber Company, continued to do. Pursuant to such arrangement, the mortgage in question and a contract for the management of the business were executed. The mortgage and contract are as follows:

"CHATTEL MORTGAGE WITH POWER OF SALE.

"This indenture, made this 23d day of February, 1925, between the Shain Lumber Company, owned by W. F. Shain, party of the first part, and W. J. Myers, party of the second part, witnesseth that, for and in consideration of the sum of $10,000, the receipt of which is hereby acknowledged, the party of the first part has bargained, sold, granted and conveyed and by these presents hereby bargains, sells and conveys to the party of the second part, executors, administrators and assigns, the following described property, to-wit: Now on lots 1, 3, 5, 7 and 8, in block 8, Fair Ground Addition to the town, now city, of Harrison, Arkansas. Said lands and findings being used by party of the first part to saw and manufacture lumber and saw materials and for the purpose of receiving lumber, lumber materials for manufacture and shipment. Said party of first part has on said lands 2 rip-saws, 2 bolting machines, 4 saws, 1 cut-off saw, 5-horse power motor electric, all belts, 1 gum-saw; materials about 10,000 feet of walnut and oak and linn timber, and all other tools, implements, lumber and property on said lands. Party of the first part is to operate said plant, to make new improvements, to add new machinery and new tools and new timber material, but all the aforesaid are to be included in this mortgage; and party of the second part may advance additional money, and all of the aforesaid property is hereby mortgaged to secure payment of same. Party of the first part places Charles P. Myers in charge as general manager, to protect interest of party of second part.

"To have and to hold the same unto the party of the second part, his executors, administrators and assigns forever, conditioned, however, as follows: Whereas, the party of the first part is indebted to the party of the second part in the sum of $10,000, due one day after date, bearing 10 per cent. interest per annum from date until paid, evidenced by note of even date, due 1 day after date. In addition, if other materials, machinery are installed in said plant, same are included herein, and if more money is advanced it is also included, and on same terms, and Charles P. Myers is agent in charge for party of second part, and must O. K. all purchases and sales.

"Now, if the party of the first part shall well and truly pay to the party of the second part the sum hereinafter mentioned, and all other indebtedness which may then be due the party of the second part by the party of the first part, together with the cost of this trust, on or before the one day after date, 1925, then this conveyance shall be void; otherwise to remain in full force and effect. And in case default shall be made in the payment of said indebtedness, as herein set forth, or should the party of the first part, prior to said one day after date, 1925, sell, attempt to sell, ship, remove, or otherwise dispose of the property herein conveyed, or any part thereof, without the consent of the party of the second part in writing, then, in either event, the party, his agent or attorney or assigns, is hereby authorized to take charge of said property on demand, without process of law, and sell and dispose of same, or so much as will be necessary, at public sale, at south courthouse door in Harrison, Arkansas, for cash in hand, upon two weeks' notice in some newspaper published in the county, or by written notices posted in five conspicuous places near the property, at which sale any of the parties hereto may purchase as other parties; and out of the proceeds of said sale the said party of the second part to retain the sum due him as herein set forth, and the cost of this trust and of said sale, rendering the surplus,

if any, to the party of the first part, his executors, administrators or assigns.

"Given under my hand and seal this 23d day of February, 1925.

"Shain Lumber Co.

"By W. Shain, proprietor and manager."

"CONTRACT.

"Know all men by these presents that, under the name of Shain Lumber Company of Harrison, Arkansas, said Shain Lumber Company is owned exclusively and solely by W. F. Shain of Harrison, Arkansas, as the sole general manager of said lumber company; said Charles P. Myers is son and agent in charge for W. J. Myers, mortgagor. Said Myers is to receive one-half of the net profits from said company. In order to fully protect his interest, said lumber company agrees for him to pay all bills out of money belonging to said company, to do all the selling of said products and property of said lumber company, handle and control exclusively all moneys, raw and finished materials of same, to sell all materials and property of said company, and Shain Lumber Company, for his said services, agrees and binds itself not to buy or sell except through him as its exclusive and sole agent in charge for his father. All shipments to be made by him, to him, and in his name, and through no one else. He is to keep all books, pay all hands, taxes, and for necessary repairs, and improvements and materials. Said Shain Lumber Company reserves the right to examine books, settlement sheets and correspondence, and to be consulted about improvements, investments, purchases and sales, and to have, at short intervals, settlements, but not to contract new debts until agent O. K.'s same. Said Myers is not to be responsible for payments for materials, wages, or any other expenses that he did not authorize in writing, and in no event for negligence or accidents. He is to be merely an employee and not in any sense a partner. Complete inventories, statements of accounts and settlements shall be made on January 1 of each year, or any

other time said employer or employee shall demand same.

"Myers accepts above terms and employment. This contract to be placed in the Farmers' & Merchants' Bank of Harrison, Arkansas, in escrow, either party to have a copy.

"Shain Lumber Co.,
"W. F. Shain, employer.
"C. P. Myers, employee."
"This February 23, 1925."

After the execution of the mortgage and contract, and prior to the institution of this suit by appellee against appellant for an accounting, on the theory that they were partners, the business was continued under the management of Charles P. Myers, during which time appellant furnished appellee $17,108.12, upon which appellee paid appellant $17,169.25, which liquidated the principal advanced, with interest thereon, leaving unpaid the money loaned on book account by appellant to appellee up to February 23, 1925, the day the mortgage and contract were executed.

In the course of the trial of the cause appellant's attorneys admitted that the note for $10,000 mentioned in the mortgage was never executed. At a later date in the trial they attempted to prove that the note was executed and lost, but the court refused to allow them to do so, because the trial had proceeded on the theory of an open account, and under that theory a master had been appointed to state an account, and, pursuant to the appointment, had filed a final report. At the time of the execution of the mortgage and contract the only indebtedness owed by appellee to appellant was the book account of $5,382.56.

The trial court found that appellee never executed a note for $10,000 to appellant on the 23d day of February, 1925, and adjudged that said mortgage did not secure the indebtedness due appellant by appellee at the time on account. He also adjudged that, because the mortgage became due one day after date, it did not

secure advances made after the maturity of said mortgage.

Appellant contends that the trial court incorrectly interpreted the purpose and intent of the mortgage. It is unnecessary to determine the correctness of the construction placed upon the mortgage by the trial court, to the effect that it did not secure advances after the maturity of the mortgage, since all the advances made after maturity were paid during the operation of the business and before this suit was instituted. The payment of the advances eliminated that question.

We cannot agree with the trial court's construction of the mortgage, that it was not intended to and did not secure the book account which appellee owed appellant at the time of the execution of the mortgage and contract. The mortgage recites that it was executed to secure a note of $10,000 of even date, which seems not to have been executed, and does not refer specifically to the book account. Certainly the mortgage and contract were executed to secure an indebtedness. According to the interpretation of the trial court, it was executed without any purpose or intent to secure any indebtedness, its execution being an idle ceremony. The only existing indebtedness at the time was the book account. The defeasance clause in the mortgage indicates very clearly that the purpose of its execution was to secure an indebtedness then existing. There can be no question that the purpose and intent was to execute a note for $10,000 to secure an indebtedness for that amount. As the only indebtedness then existing was the book account, it is quite apparent that the note was intended to include that sum, and a reading of the mortgage, in connection with the contract providing for a continuation of the business, indicates very clearly that the $10,000 note which was to be executed should also embrace future advances. The mortgage provided that, during the continuation of the business, all machinery and equipment which should be purchased was to be included in the mortgage as security for the indebtedness.

Appellee cites and relies upon the case of *First National Bank of Corning* v. *Corning Bank & Trust Company*, 168 Ark. 17, 268 S. W. 606, as decisive of its contention that the book account was not sufficiently identified in the mortgage to be secured thereby. In the case cited the mortgage described an $80.02 note of even date therewith, and did not mention two notes executed prior thereto. The mortgage contained a defeasance clause which recited that, on payment of the note, together with all other indebtedness which may be due, the mortgage should be void. The court ruled that the defeasance clause related to and secured only indebtedness created by additional advances and not to the indebtedness evidenced by the prior notes. In the case cited the $80.02 note was actually executed and was of even date with the mortgage, and the prior notes were not mentioned. Future advances were mentioned. The distinction between that case and this is that no note was executed in the instant case. There was no note to be secured specifically mentioned as in the case cited. In the instant case an indebtedness was to be secured which was to be covered in a $10,000 note. The only indebtedness existing at the time was a book account, and necessarily was the indebtedness which was to be covered by or embraced in the note. This court ruled in the case of *Carnall* v. *Duval*, 22 Ark. 136, that: "It is no objection to the validity of a mortgage, if given to secure an existing debt, that such debt is not evidenced by a note or bond, nor that a specified time is not limited for its becoming absolute, or for its foreclosure."

Our interpretation of the mortgage, when read in connection with the contract, is that one of the intentions was to secure the only existing indebtedness between the parties at the time, and that all of the assets of appellee were pledged to secure said indebtedness.

On account of the error indicated the decree of the court dismissing appellant's cross-complaint asking for a foreclosure of its mortgage will be reversed, and the cause is remanded with directions to the trial court to

foreclose the mortgage for the payment of the indebtedness existing between the parties at the time said mortgage was executed, together with interest thereon.